

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 31, 1952

Hon. C. H. Cavness　　　　　Opinion No. V-1427.
State Auditor
Capitol Station　　　　　　Re:　Authority of State col-
Austin, Texas　　　　　　　　　leges, participants
　　　　　　　　　　　　　　　　under the College Build-
　　　　　　　　　　　　　　　　ing Amendment, to use
　　　　　　　　　　　　　　　　their appropriated local
Dear Sir:　　　　　　　　　　　funds for "improvements".

　　　　You have requested an opinion of this office
relating to Section 17 of Article VII of the Texas
Constitution, the College Building Amendment adopted in
1947. This amendment concerns chiefly the use of funds
for the acquiring and constructing of buildings or other
permanent improvements by the State's institutions of
higher learning that participate in the proceeds of the
ad valorem tax levied thereunder. You submit the fol-
lowing two questions:

　　　　　1. Are the local funds now required
　　by statute to be deposited in the State
　　Treasury by all of the State's colleges or
　　universities, beginning with the current
　　biennium, State funds to the same extent,
　　and subject to the same restrictions for
　　appropriation by the Legislature and expen-
　　diture by the various such institutions, as
　　general revenue funds placed in the State
　　Treasury from all sources?

　　　　　2. What is the meaning of the words
　　"buildings or other permanent improvements"
　　in Section 17 where participating institu-
　　tions are prohibited from receiving any
　　other State funds for the purpose of acquir-
　　ing or constructing such?

　　　　Section 17 of Article VII provides in part:

　　　　"...　there is hereby levied ...
　　a state ad valorem tax on property of Five
　　(5¢) Cents on the One Hundred ($100.00)

Dollars valuation for the purpose of creating a special fund for the purpose of acquiring, constructing and initially equipping buildings, or other permanent improvements at the designated institutions of higher learning; and the governing board of each of such institutions of higher learning is fully authorized to pledge all or any part of said funds allotted to such institution as hereinafter provided, to secure bonds or notes issued for the purpose of acquiring, constructing and initially equipping such buildings or other permanent improvements at said respective institutions. . . .

". . . and all such designated institutions of higher learning which participate in the allocation or re-allocation of, such funds shall not thereafter receive any other state funds for the acquiring or constructing of buildings or other permanent improvements . . ./except in case of calamity/."

It is well known that the marked increase in enrollment in the State institutions of higher learning following the close of World War II, coupled with the fact that practically all building activities had been suspended for several years during the progress of the war, created an acute need for expansion of their facilities. The purpose of the amendment was to provide for the alleviation of these conditions by establishing a new method for the financing of buildings and other permanent improvements at the State colleges, which guaranteed the receipt of the tax revenue set aside in the amendment and permitted the issuance of bonds against it.

At the time of the adoption of Section 17 of Article VII, the handling of institutional receipts of State colleges was regulated by Article 2654d, V.C.S. These funds, commonly referred to as "local funds," were placed in local depositories by the collecting institution instead of being deposited in the State Treasury. In 1951 the Legislature changed the method of handling institutional receipts by requiring certain of the monies to be deposited in the State Treasury, but they are still kept "separate and apart from funds now deposited in the

Treasury." Acts 52nd Leg., R.S. 1951, ch. 474, p. 841, codified as Art. 2543c, V.C.S. In view of the prevailing method in 1947 when the College Building Amendment was adopted, the contention has been advanced that institutional receipts were not intended to be classed as "state funds" within the meaning of the provision of Section 17 which reads:

> " . . . all such designated institutions of higher learning which participate in the allocation or re-allocation of such funds shall not thereafter receive <u>any</u> <u>other state funds</u> for the acquiring or constructing of buildings or other permanent improvements . . ." (Emphasis added throughout.)

The correctness of this contention depends on the meaning to be ascribed to the term "other state funds" as used in Section 17 of Article VII. Broadly speaking, state funds include all public money, from whatever source, which is received by or through agencies of the State. Under this broad general rule this office has held local funds to be "state funds" within the meaning of certain specific statutes. Att'y Gen. Ops. 0-1694 (1939), 0-7012 (1946). However, the term is sometimes used in a more restricted sense as meaning public funds derived from limited sources. For example, the Banking Department Self-Support and Administration Act (Art. 342-112, V.C.S.) provides that the expenses incurred by the Banking Department shall be paid from the fees and revenues collected by it and that no such expenses shall ever be a charge against the "funds of this State." Similarly, the Plumbing License Law (Art. 6243-101, Sec. 7, V.C.S.), after providing for the payment of expenses incurred under the act from fees collected by the Plumbing Board, further provides that none of these expenses shall ever be a charge against the "funds of the State of Texas." Under these statutes, the term "state funds" does not include the fees collected by the agencies. Certainly these fees are public money and their expenditure is subject to the control of the Legislature, but they have been excluded from the definition of "state funds" as used in those statutory provisions. While the terminology may not be technically correct, the use of the term "state funds" in varying senses has been common practice.

242

The meaning to be ascribed to terms used in a constitutional provision is the meaning intended by its adopters. Sometimes the same word is given a different meaning in different parts of the Constitution. Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S.W. 553 (1917); Hamilton v. Davis, 217 S.W. 431 (Tex. Civ. App. 1920, error ref.). The meaning of a term in a particular provision is determined from the context in which it is used, and the history of the subject matter and the purpose of the provision may be considered in arriving at the intended meaning. Thus, the same monies may be state funds for one purpose and not for another, depending upon the intent of the adopters of the provision involved, as indicated from the context and the history of the enactment. Buchanan v. Town of Salina, 58 N.Y.S.2d 797 (App. Div. 1945).

At the time Section 17 of Article VII was adopted, the Legislature had placed institutional receipts in a different category from other appropriated funds for various purposes, both in its appropriation acts and in other statutes. For example, in Article 2647c, V.C.S., the Legislature provided for the financing of certain teacher training programs of State colleges from their "local funds." Att'y Gen. Op. V-1333 (1951). The Legislature regularly made separate appropriations of these funds to the collecting institution each biennium for its "support, maintenance, operation, and improvement" or other similar purposes. See, e.g., H.B. 246, Acts 50th Leg., 1947, ch. 339, p. 649, at p. 650. In the appropriation act of 1947 these funds are referred to as "local funds" as distinguished from "legisative appropriations," the latter term obviously meaning appropriations from the General Revenue Fund or other funds then being deposited in the State Treasury. H.B. 246, supra, sec. 10, p. 667. We may take knowledge of the fact that in both school and legislative circles it was common practice to differentiate these institutional receipts from other appropriated funds by the terms "local funds" and "state funds." While this use of the terms was not accurate in a technical sense, it had been prevalent for a long time and was generally understood.

In addition to the biennial appropriation of institutional receipts for purposes which included improvements, the Legislature from time to time made appropriations out of the General Revenue Fund or other

funds in the State Treasury for buildings and other permanent improvements at the State colleges as the need arose and as the financial condition of the State permitted. The fund from which these latter appropriations were paid was ordinarily the General Revenue Fund, which was derived in part from a State ad valorem tax limited by Section 9 of Article VIII of the Constitution to 35 cents on the $100 valuation. In setting up the five-cent ad valorem tax for the college building program, Section 17 of Article VII also reduced the general ad valorem tax rate by five cents, thereby indicating that the five cents levied for "acquiring, constructing and initially equipping buildings, or other permanent improvements at the designated institutions" was to be substituted for funds formerly provided by the Legislature from tax revenues. In our opinion, it was not intended as a substitute for institutional receipts also, which were regularly and customarily treated as being in a different category. The "other state funds" which the institutions were prohibited from receiving were those funds in categories from which the additional appropriations were made from time to time. Although institutional receipts are state funds within the broad meaning of that term, we are of the opinion that it was not intended that they be included in the term as used in Section 17 of Article VII.

This construction of the term "other state funds" in Section 17 of Article VII is borne out by other provisions in the joint resolution submitting this constitutional amendment to the people. This joint resolution (S.J.R. 4, Acts 50th Leg., 1947, p. 1184) also submitted Section 18 of Article VII, which was adopted at the same election. Section 18 provides that the Board of Regents of the University of Texas and the Board of Directors of the Agricultural and Mechanical College of Texas shall have the right to issue bonds against the income from the Permanent University Fund for the same purposes as are provided in Section 17 for the other colleges in Texas.

It is thus seen that the purpose of Section 17 was to place the schools named in that section on a parity with those schools which participate in the income from the Permanent University Fund. Section 18 does not contain a provision prohibiting the schools affected by it from receiving other state funds, but a

comparable provision was already contained in Section 14 of Article VII, which provides:

> ". . . no tax shall be levied, and no money appropriated, out of the general revenue . . . for the establishment, and erection of the buildings of the University of Texas."

This section has always been understood as not prohibiting the appropriation of institutional receipts for the erection of buildings at the institutions included in Section 18. It is clear, then, that with regard to those schools sharing in the Permanent University Fund there is no limitation as to the use of local funds in the construction of permanent improvements.

To hold that "state funds" in Section 17 has a different meaning from "general revenue" in Section 14 would be to discriminate against those schools whose building program is set up by Section 17. This would certainly never have been the intent of the Legislature at the time of the proposal of the constitutional amendments in question nor of the people at the time of their adoption.

This conclusion is further borne out by the caption of Senate Joint Resolution No. 4, supra, which states that the joint resolution proposes an amendment to the Constitution "providing a method of payment for the construction of buildings and other permanent improvements." It therefore appears that the Legislature intended that the use of the five-cent ad valorem tax provided by Section 17 would not be the sole method of financing the construction of permanent improvements, and evidently the Legislature understood that there existed another method for such construction.

The argument has been advanced that institutional receipts, even if not formerly within the term "state funds" as used in Section 17 of Article VII, are now included in the term because they must be deposited in the State Treasury. We cannot agree with this contention. The meaning of a constitutional provision is fixed by the intention of the adopters. Since institutional receipts were not included in the intended meaning of "state funds" at the time this amendment was adopted, no subsequent action of the Legislature can enlarge the term so as to include them. The fact that the

Legislature has changed the method of deposit for these funds has not changed the meaning of the constitutional provision.

It has been pointed out that although institutional receipts are not state funds within the meaning of Section 17, they are nevertheless public money within the control and disposition of the Legislature and may be disposed of by that body in any manner, within constitutional limits, which it may deem proper. While it is within the power of the Legislature to prevent the use of these funds for acquiring or constructing new buildings and other permanent improvements, it has not done so. Article 2543c requires that institutional receipts be kept separate and apart from other funds deposited in the State Treasury and consequently there is no impediment to their appropriation for permanent improvements by reason of a commingling with other funds. Sections 2 and 31 of Article V of the current appropriation bill (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, at pp. 1462, 1472) appropriate institutional receipts to each collecting institution for purposes which include "operation, maintenance, and improvement" and "improvements and repairs." We do not find any evidence of a legislative intent to limit the nature of the improvements for which these funds may be used.

In your second question you ask for a clarification of the meaning of "buildings or other permanent improvements" for which the constitutional funds may be used and, conversely, for which the participating institutions are prohibited from receiving any other state funds.

As observed earlier in this opinion, the purpose of the amendment was to provide for the expansion of facilities at the participating institutions. In our Opinion V-848 (1949) it was stated that the people and the Legislature did not intend that the money made available by the amendment should be used for maintenance, alterations, and repairs for existing facilities, but rather that they intended that it should be invested in new buildings and similar permanent improvements which were so badly needed after the late war. It was pointed out that a construction of the amendment requiring use of the funds for maintenance, repair, or alteration of buildings then existing or later acquired with amendment funds would tend to defeat the purpose for

which it was adopted, viz., to acquire additional buildings and other permanent improvements. In Opinion V-931 (1949), it was further held that only those buildings and other permanent improvements acquired or constructed with amendment building funds may be initially equipped at the expense of those funds. However, the funds may be used for purposes of clearing, grading, drainage, or other surface improvements in anticipation of and necessarily incidental to the construction of a new building or other permanent improvement.

We think the reasoning and holdings in our cited opinions are sufficient to demonstrate that the purpose of the amendment was not to cover all improvements that might be needed at the designated colleges for the thirty years of its duration. If the improvement contemplated requires the construction or acquisition of a new structure, for example, a building, a wing on a building, or other permanent structure, it would seem the amendment funds were created for such purposes, requiring capital investments of major proportions which formerly and generally were provided for by specific appropriations from the general revenue. But if the improvement contemplated is merely to alter, remodel, or reconvert a classroom or rooms or a laboratory, or to improve an existing water, heating, or sewer system or reroute a portion thereof, our former opinions have indicated that the amendment funds were not intended to be used for such purposes.

We will not attempt to lay down any hard and fast line as to when there is an "acquiring" or "construction" and when there is a repairing or alteration. The matter rests in the first instance within the sound discretion of the governing boards of the various institutions. The responsibility was placed there by the people in the adoption of the amendment.

Section 17 of Article VII does not prohibit the use of other state funds for repairs, alterations, and improvements for which the amendment funds may not be expended, and the Legislature is free to make appropriations out of any available funds for such improvements. In the current appropriation act (H.B. 426, supra) the Legislature has made an appropriation to each institution under an item listed as "General Revenue Appropriation for General Operating Expenses." Section 30 of

Article V of that act defines "General Operating Expenses" as including " . . . improvements and repairs; physical plant operation and maintenance; . . ." This appropriation is therefore available for improvements and repairs which are not within the scope of the College Building Amendment.

## SUMMARY

Institutional receipts of State institutions of higher learning, commonly referred to as "local funds," are not "other state funds" within the meaning of that term as used in Section 17 of Article VII, Texas Constitution (College Building Amendment). Local funds appropriated to the colleges under Sections 2 and 31 of Article V, H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, for purposes including "improvements" may be used for all needed improvements, including the acquisition or construction of buildings or other permanent improvements.

The College Building Amendment does not restrict the Legislature in providing appropriations from the General Revenue Fund or any other available fund for those improvements which may not be financed out of the amendment funds.

The phrase "buildings or other permanent improvements" as used in Section 17 of the College Building Amendment means, generally, additional structures or other permanent improvements for the expansion of existing facilities at the colleges. It does not include repairs and alterations to existing facilities.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

C. K. Richards
Trial & Appellate Division

*Mary K. Wall*
Mary K. Wall

Charles D. Mathews
First Assistant

*E. Jacobson*
E. Jacobson
        Assistants

MKW:EJ:wb